IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| **New England Synod, Evangelical Lutheran Church in America,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **Department of Homeland Security,** *et al.*, <br><br> Defendants. | Case No. 4:25-cv-40102-FDS |

### PLAINTIFFS' NOTICE OF SUPPLEMENTAL FACTS
### AND REPORTS OF IMPENDING ENFORCEMENT OPERATIONS

Plaintiffs write to inform the Court of several recent developments relevant to Plaintiffs' pending motion for a stay under 5 U.S.C. § 705 or, in the alternative, a preliminary injunction. *See* ECF Nos. 32, 33. Most disturbingly, these developments include recent news reports alleging that DHS plans to target Spanish-speaking churches for immigration enforcement during the upcoming holiday season.

First, since Plaintiffs filed their motion, Defendants and their agents have continued to carry out immigration enforcement operations at or near houses of worship pursuant to Defendants' 2025 Policy of unrestrained enforcement at sensitive locations. On October 17, several individuals were detained by masked federal agents in the parking lot of one of Plaintiffs' member congregations. *See* Moore Decl., Ex. 1 (Declaration of Rev. Caleb Crainer), ¶¶ 6–11. The agents started arriving early in the morning in unmarked white vans and SUVs that eventually delivered a total of around 20 officers—some visibly armed—to the church parking lot. *Id.* at ¶¶ 6, 8–9, 12. After apparently using the parking lot as a staging area for some kind of

1

enforcement action, the agents were seen escorting people with zip-tied hands. *Id.* at ¶¶ 9–11. The church was not asked if this enforcement action could take place in its parking lot, and no such permission would have been granted if sought. *Id.* at ¶ 13. But that did not stop bystanders from concluding that the church endorsed the operation—something directly contrary to the church's religious mandate to love the stranger. *Id.* at ¶¶ 4, 14. In response to the incident, the congregation has been compelled to take a number of steps to improve security, including spending $5,000 to upgrade the church campus's security cameras and posting additional "No Trespassing" signs on the premises. *Id.* at ¶ 16.

Second, according to a press report, last week "masked federal agents" arrived on a church's property in Charlotte, North Carolina, where "[a]bout 15 to 20 church members were doing yard work" and detained one of those members. Moore Decl., Ex. 2. Witnesses reported that the agents were "with immigration," but "asked no questions and showed no identification before taking away one man, whose wife and child were inside [the church] at the time." *Id.* The agents reportedly "attempted to grab others, too." *Id.* According to reporting, even church members who were U.S. citizens fled when officials arrived, and the church "is suspending services and yard work until members feel safe to gather again without the threat of immigration raids." *Id.*

Third, according to other press reports, DHS agents likewise have recently conducted operations on or near the premises of churches in Washington, D.C., and Chicago. *See* Moore Decl., Exs. 3, 4.

Finally, disturbing new reporting claims that DHS components "intend to implement a comprehensive plan to target Spanish-speaking churches across the country during the upcoming holiday season between Thanksgiving, Nov. 27, and Christmas, Dec. 25." Moore Decl., Ex. 5;

*see also id.*, Exs. 6, 7. According to these reports, which claim to be based on sources within the U.S. Attorney's offices for the Districts of Massachusetts, Rhode Island, and New York, "the plan" is a "nationwide strategy." Moore Decl., Ex. 5; *see also id.*, Exs. 6, 7.

Plaintiffs have not been able to independently confirm the authenticity of these press reports, but when Plaintiffs' counsel contacted Defendants' counsel directly to seek more information about the allegedly planned holiday raids, counsel for the government did not deny the report, stating only that "DHS has no comment on the article." Moore Decl., Ex. 8. In response to questions from journalists on the veracity of the plan to raid churches over the holidays, DHS reportedly said that "ICE does not raid churches," Moore Decl., Ex. 9, but it did not deny the possibility of targeting churches for parking-lot or perimeter enforcement operations and specifically emphasized that "there may" in fact "be a situation" in which it *would* raid a house of worship. *Id.* The agency also failed to address what operations other DHS components, such as Customs and Border Protection, may be planning. *Id.*

Plaintiffs count among their members many Spanish-speaking churches that would be targeted if these reports are true. *See* ECF Nos. 33-1, ¶ 29; 33-3, ¶ 7; 33-4, ¶¶ 5, 25; 33-5, ¶ 5; 33-6, ¶¶ 6, 15, 23; 33-7, ¶¶ 15, 19; 33-9, ¶ 15; 33-15, ¶ 16; 33-16, ¶ 4; 33-17, ¶ 6. Indeed, reporting about the plan has circulated among churchgoers, who will likely—and reasonably—be further deterred from attendance. *See* Moore Decl., Ex. 9.

Even if the reported plan to single out Spanish-speaking churches for enforcement does not materialize, and Defendants simply continue their current policy of unrestrained enforcement at houses of worship, absent preliminary relief, the harms to Plaintiffs, their members, and countless other worshippers will continue and could be particularly severe over the holiday season—which includes not only the forthcoming Thanksgiving and Christmas holidays, but also

the Feast of Our Lady of Guadalupe, held annually on December 12, which is an important religious holiday for many people of Latin American heritage. Plaintiffs respectfully request the Court's prompt intervention to prevent serious and irreparable harm to worshippers' ability to practice their faith in community with others during a time of such vital religious significance.

Dated: November 21, 2025

Respectfully submitted,

/s/ Sterling Moore

| | |
|---|---|
| Ryan Downer* | Kevin E. Friedl* |
| Madeleine Gates* | Sarah Goetz* |
| Melissa Colon* | Andrew Bookbinder* |
| WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS | J. Sterling Moore* |
| | Mark B. Samburg |
| 700 14th St. NW, Suite 400 | Audrey Wiggins* |
| Washington, DC 20005 | DEMOCRACY FORWARD FOUNDATION |
| ryan_downer@washlaw.org | P.O. Box 34553 |
| madeleine_gates@washlaw.org | Washington, DC 20043 |
| melissa_colon@washlaw.org | Phone: (202) 448-9090 |
| | Fax: (202) 796-4426 |
| Richard J. Leveridge* | kfriedl@democracyforward.org |
| Sonia W. Murphy* | sgoetz@democracyforward.org |
| Brandon A. Levey* | abookbinder@democracyforward.org |
| Samone Ijoma* | smoore@democracyforward.org |
| Brittney M. Welch* | msamburg@democracyforward.org |
| GILBERT LLP | awiggins@democracyforward.org |
| 700 Pennsylvania Ave. SE #400 | |
| Washington, DC 20003 | |
| Leveridger@gilbertlegal.com | |
| Murphys@gilbertlegal.com | |
| Leveyb@gilbertlegal.com | |
| Ijomas@gilbertlegal.com | *Admitted *pro hac vice* |
| Welchb@gilbertlegal.com | |

4