# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NEW ENGLAND SYNOD, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civil Action No. 4:25-cv-40102-FDS |

**SUPPLEMENTAL DECLARATION OF KATHLEEN A. SWEENEY**

I, Kathleen A. Sweeney, declare as follows:

1. I am employed by the Department of Homeland Security (DHS), Immigration and Custom Enforcement (ICE), Enforcement and Removal Operations (ERO) as Unit Chief (UC) Northeast Operations, overseeing field offices in Boston, Buffalo, Detroit, Newark, Philadelphia and New York City.

2. I have been employed by DHS ICE (previously the Immigration and Naturalization Service (INS)), since August 27, 2002, as I was hired and worked prior to the creation of the U.S. Department of Homeland Security. Prior to my position as UC in Field Operations, I have served in multiple positions, including but not limited to Detention Enforcement Officer, Immigration Enforcement Agent, Deportation Officer, Supervisory Detention and Deportation Officer, Detention and Deportation Officer, Program Manager, and Unit Chief for the Office of Firearms and Tactical Programs. Additionally, I have held acting positions in the capacity of Chief of Staff, Deputy Assistant Director, and Assistant Director.

3. Currently, as a UC in Field Operations my responsibilities include expertise in the following portfolio items: Non-detained management; Enforcement management; detained docket management; the Victim Centered Approach to enforcement actions and detention actions; and serving as the point of contact for operations support. I also have previous experience with detention management and detention standards as well as expertise with removals, litigations, Office of Public Affairs, Congressional inquiries, and Office of Partnership and Engagement. I have served as UC in Field Operations since December 29, 2024.

4. I am aware through information furnished to me in the course of my official duties that, on September 4, 2026, this Court ordered Defendants to provide a supplemental declaration on or before September 25, 2026, setting forth, in a reasonable degree of detail, all instances of which the Agency is aware of any actual or potential violations of the preliminary injunction (PI) entered in this matter on February 13, 2026. The Court defined a potential violation of the PI as one in which a reasonable person could take the view that the PI was or may have been violated, even if the government does not believe that a violation occurred, and whether or not any participant actually intended to violate the PI.

5. I am aware, through information furnished to me in the course of my official duties, of two separate alleged potential violations of the preliminary injunction that were brought to the attention of DHS by Plaintiffs' counsel.

a. First, I am aware that, on June 5, 2026, Plaintiffs contacted Defendants' counsel and alleged that on April 19, 2026, ICE agents waited in the parking lot of Iglesia Luterana San Pablo in San Antonio—a member of Plaintiff Southwestern Texas Synod—to follow an individual as he left the place of worship and stopped the individual shortly after leaving the parking lot. In response to Plaintiffs' allegation,

ERO in a good faith effort searched its records for the alleged incident. Specifically, San Antonio ERO contacted Acting Assistant Field Office Director regarding this incident. San Antonio ERO office located no records of ERO presence at the location in question on April 19, 2026.

b. Second, I am also aware that, on July 17, 2026, Plaintiffs contacted Defendants' counsel and alleged an ICE officer chased a man through the patio of New Hope Lutheran Church—a member of Plaintiff Southwest California Synod—and arrested him in the church's parking lot on July 8, 2026.

   i. In response to Plaintiffs' allegation, ICE confirmed that, on July 8, 2026, at approximately 8:55 am, four ICE officers were conducting surveillance in the vicinity of 5033 Kanan Road Agoura Hills, CA, approximately 400 feet away from New Hope Lutheran Church and separated by several businesses. While conducting this surveillance, the officers observed a male individual on Agoura Road, near its intersection with Kanan Road, again, approximately 400 feet away from New Hope Lutheran Church and separated by several businesses. At approximately 9:05 am, the officers approached the area in their vehicles, exited, and contacted the individual to confirm his identity. All officers were wearing "POLICE ICE" outer markers and identifiers and were operating unmarked ICE police vehicles equipped with functioning red and blue emergency lights that were activated upon the stop. The officers identified themselves as Deportation Officers with ICE. The individual fled on foot, running on Agoura Road away from Kanan Road. An officer, Officer 1, shouted "ICE STOP." The

individual did not stop. Officer 1 gave chase on foot with a second officer, Officer

ii. I understand that between the area where the foot chase started and the next set of buildings there are two driveways separated by a tree. The individual ran up the second driveway and took a left onto a pedestrian path that had an open gate. The pedestrian path led to a parking lot. There was no signage indicating that the individual and two officers were entering church property. Officer 1 arrested the individual in the parking lot.

6. Following the Court's Order of September 4, 2026, ICE ERO searched its records for any potential violations of the preliminary injunction. I conducted a search of a spreadsheet that ICE ERO maintains to document immigration activities at sensitive locations. The spreadsheet contains alien's A-numbers, dates of arrest, and addresses. I performed a search using the timeframe from February 13, 2026, to September 25, 2026.

7. There are, however, systems limitations. Systems limitations aside, ICE ERO conducted a good faith search and is not aware of any alleged preliminary injunction violations. For example, the location of arrest is a free text field, so the locations may only list a physical address and not necessarily identify the location as "sensitive".

8. In order to deny the existence of any alleged potential violations of the preliminary injunction, ICE ERO would need to manually review every encounter record in its control created since February 13, 2026. ICE ERO has identified approximately 296,783 encounter records created between February 13, 2026, to September 21, 2026. ICE ERO could not physically review these materials within the Court's deadline given the compressed timeline and operational burden associated with such a search.

I, Kathleen A. Sweeney, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Date: September 25, 2026

KATHLEEN A SWEENEY
Digitally signed by KATHLEEN A SWEENEY
Date: 2026.09.25 17:42:38 -04'00'

Kathleen A. Sweeney
Unit Chief, Northeast Region
Domestic Operations, Field Operations
Enforcement and Removal Operations
U.S. Immigration and Custom Enforcement
U.S. Department of Homeland Security