**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

**New England Synod, Evangelical Lutheran Church in America,** *et al.*,

Plaintiffs,

v.

**Department of Homeland Security,** *et al.*,

Defendants.

**Case No. 4:25-cv-40102-FDS**

**RESPONSE TO DEFENDANTS' NOTICE**

DHS's supplemental declarations only underscore the high, systemic risk of noncompliance that Plaintiffs face. First, DHS's poorly calibrated keyword searches and internal ad hoc discussions do not amount to the good-faith review the Court ordered. DHS components reported applying inconsistent search terms—*compare* ECF 137-1 ("ERO Decl.") ¶ 7 (apparently relying on the presence or absence of the word "sensitive" in spreadsheet entries) *with* ECF 137-2 ("HSI Decl.") ¶ 4 (searching for terms "sensitive location") *and* ECF 137-3 ("OFO Decl.") ¶ 9 (searching for terms "church," "synagogue," "mosque," and "place of worship")—sometimes across records they acknowledged would not necessarily use those terms, *see* ERO Decl. ¶ 7 (noting records would "not necessarily identify the location as 'sensitive'"); *see also generally* OFO Decl. (not confirming whether records would necessarily use chosen terms), or across records they acknowledged were not necessarily comprehensive, *see* HSI Decl. ¶ 4 (explaining that agents may, as a matter of "routine practice, not standard policy," email HSI about relevant operations).[1]

[1] DHS also failed to represent that its components' reviews were comprehensive of all immigration-enforcement actions covered by the preliminary injunction. It is unclear, for

These would not be good-faith searches for potential preliminary injunction violations even if the preliminary injunction used the word "sensitive" (it does not). *See* ECF 75 (PI Order) (using the term "Protected Area" rather than "sensitive location").[2]

ERO and OFO further failed to cross-check the physical addresses in their records against the addresses of Plaintiffs' Protected Areas. *See* ERO Decl. ¶¶ 6–7 (describing a spreadsheet it maintains specifically "to document immigration activities at sensitive locations" that includes arrest locations' "physical address[es]"); OFO Decl. ¶ 9 (describing at least one record with an address). And USBP did not even purport to know how its constituent Sectors arrived at their responses. *See* ECF 137-4 ("USBP Decl.") ¶ 9 (acknowledging it "did not direct the nature of the search" and that the "Sectors/Stations were able to use their discretion" in answering its questions). The Court should accordingly give the supplemental declarations little weight in crafting its contempt remedy.

DHS's responses confirm that its lack of a reliable method for ensuring compliance has deprived it of a reliable method for identifying noncompliance. As DHS established, when its agents on the ground are aware that the preliminary injunction is implicated, they will sometimes simply discuss the preliminary injunction amongst themselves and decide whether they are about to violate it. *See* ECF 125-1 (Zappone Decl.) ¶ 10. The supplemental declarations provide no

---

example, whether the records declarants searched included records of operations carried out by state and local law enforcement officers exercising ICE-delegated immigration-enforcement powers. *See* ICE, Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act, https://perma.cc/2A3A-GZSX; ECF 75 (PI Order) ¶ 1(b)(6) (binding "all other persons who are in active concert and participation with" Defendants).

[2] Any search based on references to the preliminary injunction would also be underinclusive. While Plaintiffs filed their Adjacent Protected Areas on March 6, 2026, *see* ECF 80, DHS did not distribute that list internally to agents until May 13, 2026, *see* ECF 125-1 (Zappone Decl.) ¶¶ 2–3. For more than two months, then, records of operations at these Protected Areas would not be expected to include any reference to the preliminary injunction.

evidence that DHS requires agents to document these discussions or their conclusions at all. *See* ERO Decl. ¶¶ 6–7 (reporting no required keyword, checkbox, or other indicator agents must use when documenting an operation at a Protected Area); HSI Decl. ¶ 4 (reporting it "does not currently maintain tracking for 'conducting an immigration enforcement action' at or near sensitive locations as described"); *see also generally* OFO Decl. (not describing any such recordkeeping requirements); USBP Decl. (same). So deficient are DHS's recordkeeping and internal-coordination guardrails that, on their own telling, components trying to audit compliance are apparently left searching for keywords that *might* have been included in relevant reports, *see* HSI Decl. ¶ 4 (searching "sensitive location"); OFO Decl. ¶ 9 (searching "church," "synagogue," "mosque," and "place of worship"), or undertaking a manual review of *every* enforcement record they hold, *see* ERO Decl. ¶ 8; USBP Decl. ¶ 8.

In its contempt remedy, the Court should impose at least the basic guardrails that DHS has not. DHS's supplemental declarations weigh in favor of Plaintiffs' recommendations that the Court order additional training for certain DHS officers and require DHS to designate an officer tasked with overseeing compliance and filing status reports. *See* ECF 128, at 13–14. The declarations also suggest that the Court should consider requiring DHS to impose basic recordkeeping requirements to ensure that enforcement operations at or near Protected Areas are uniformly documented to facilitate record retrieval and compliance auditing.

Dated: September 29, 2026

Respectfully submitted,

*<u>/s/ J. Sterling Moore</u>*
J. Sterling Moore*
Kevin E. Friedl*
Sarah Goetz*
Mark B. Samburg
Ayesha Khan*

Ryan Downer*
Madeleine Gates*
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
700 14th St. NW, Suite 400

Washington, DC 20005
ryan_downer@washlaw.org
madeleine_gates@washlaw.org

Richard J. Leveridge*
Sonia W. Murphy*
Brandon A. Levey*
Samone Ijoma*
Brittney M. Welch*
GILBERT LLP
700 Pennsylvania Ave. SE #400
Washington, DC 20003
Leveridger@gilbertlegal.com
Murphys@gilbertlegal.com
Leveyb@gilbertlegal.com
Ijomas@gilbertlegal.com
Welchb@gilbertlegal.com

DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
smoore@democracyforward.org
kfriedl@democracyforward.org
sgoetz@democracyforward.org
msamburg@democracyforward.org
akhan@democracyforward.org

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

On September 29, 2026, I served this document on all parties by electronically filing it through the CM/ECF system.

*/s/ J. Sterling Moore*
J. Sterling Moore