**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

**New England Synod, Evangelical Lutheran Church in America,** *et al.*,

Plaintiffs,

v.

**Department of Homeland Security,** *et al.*,

Defendants.

**Case No. 4:25-cv-40102-FDS**

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs write to inform the Court of the D.C. Circuit's recent ruling in *Mennonite Church USA v. DHS*, --- F.4th ----, 2026 WL 3132807 (D.C. Cir. Oct. 20, 2026), which reversed a district court decision on which Defendants have relied in their summary judgment briefing and confirmed the standing of religious organizations to challenge Defendants' 2025 Policy.

*Mennonite Church* involved a challenge to the 2025 Policy jointly brought by 27 religious organizations. The district court concluded that the plaintiffs likely lacked standing and on that basis denied their motion for a preliminary injunction. *Id.* at *4.

The D.C. Circuit reversed, holding that the plaintiffs had standing. The court found it necessary to consider only one kind of the plaintiffs' injuries-in-fact: "harm to their members from the imminence of increased enforcement actions." *Id.* at *5. The court explained that the 2025 Policy "expressly targets houses of worship for enforcement activity, by removing constraints that previously protected those places," and further noted that "enforcement operations have already begun at or near the premises of plaintiff-affiliated congregations, as a direct result of [the 2025 Policy]." *Id.* at *7; *cf.* ECF No. 111 at 5-7 (detailing numerous

enforcement operations at or near Plaintiffs' members). "Because plaintiffs assert injury from agency action that burdens expressive rights, and they are directly injured by the government's already-implemented policy … , they likely have met the standard for showing 'imminent' harm." *Mennonite Church*, 2026 WL 3132807, at *8 (quotation marks, brackets, and citation omitted); *cf.* ECF No. 111 at 21-22 (describing how Plaintiffs are harmed by, among other things, the "genuine threat of enforcement at their churches"); ECF No. 121 at 8-9 (same). In so holding, the D.C. Circuit readily distinguished *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), on which Defendants have relied here, explaining that "[t]he effect on plaintiffs' members [of the 2025 Policy] … is direct and completely different from the situation in *Clapper*." *Mennonite Church*, 2026 WL 3132807, at *7; *cf.* ECF No. 111 at 22 (similarly distinguishing *Clapper*).

The court also concluded that the plaintiffs had shown their injury was fairly traceable to the 2025 Policy and that "at least some of their asserted injury" would likely be redressed by a stay of the policy or by an injunction limiting the circumstances under which the Department of Homeland Security and its agents could conduct enforcement at or near the plaintiffs' houses of worship. *Mennonite Church*, 2026 WL 3132807, at *8-9 (quotation marks omitted). As part of its redressability analysis, the court underscored the legal consequences that flowed from the Mayorkas Memo. *Id.* at *9-11; *cf.* ECF No. 111 at 33-37 (explaining that the Mayorkas Memo—and thus the 2025 Policy—are "final agency actions" from which legal consequences flow). That memo, the court explained, "requir[ed] DHS to change how it conducts immigration enforcement" by "presumptively prohibit[ing] enforcement activity at houses of worship" and "explicitly constrain[ing] such operations." *Mennonite Church*, 2026 WL 3132807, at *9, 11

(quotation marks omitted). "[C]hallenges to policy memos like the one at issue here are commonplace," the court emphasized. *Id.* at *10.

One judge dissented, opining that the plaintiffs had put forward insufficient evidence to establish redressability. *Id.* at *13 (Rao, J., dissenting). Whatever the merits of that conclusion in *Mennonite Church*, however, it simply has no application here, where Plaintiffs have put forward incontrovertible evidence of redressability for the harms they have identified, including in the form of documented rebounds in attendance and participation at member churches protected by the preliminary injunction. ECF No. 111 at 17-18, 24.

The D.C. Circuit thus remanded for further proceedings. Neither the dissent nor the majority (nor, for that matter, the government) suggested that there would be any prejudice to the government from the plaintiffs—"a coalition of twenty-seven Judeo-Christian organizations" that "collectively represent the interests of millions of worshippers"—continuing to press their challenge together in a single lawsuit. *Mennonite Church*, 2026 WL 3132807, at *2-3; *cf.* ECF No. 121 at 38-40 (refuting Defendants' claims that they would be prejudiced by the smaller group of Plaintiffs here proceeding together in this case).

Dated: October 22, 2026

Respectfully submitted,

*/s/ Kevin E. Friedl*
Kevin E. Friedl*
J. Sterling Moore*
Sarah Goetz*
Mark B. Samburg
Ayesha Khan*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
kfriedl@democracyforward.org

Ryan Downer*
Madeleine Gates*
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
700 14th St. NW, Suite 400
Washington, DC 20005
ryan_downer@washlaw.org
madeleine_gates@washlaw.org

Richard J. Leveridge*
Sonia W. Murphy*
Brandon A. Levey*

Samone Ijoma*
Brittney M. Welch*
GILBERT LLP
700 Pennsylvania Ave. SE #400
Washington, DC 20003
Leveridger@gilbertlegal.com
Murphys@gilbertlegal.com
Leveyb@gilbertlegal.com
Ijomas@gilbertlegal.com
Welchb@gilbertlegal.com

smoore@democracyforward.org
sgoetz@democracyforward.org
msamburg@democracyforward.org
akhan@democracyforward.org

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

On October 22, 2026, I served the foregoing on all parties by electronically filing it through the CM/ECF system.

*<u>/s/ Kevin E. Friedl</u>*
Kevin E. Friedl