**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

NEW ENGLAND SYNOD, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Defendants

Case No. 4:25-cv-40102-FDS

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' CONDITIONAL (SECOND) MOTION FOR A PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiffs' Conditional (Second) Motion for a Preliminary Injunction consists of two motions combined in one: first, a request to proceed to final judgment; and, second, a request to expand the current preliminary injunction to the uncovered Plaintiffs identified in the Amended Complaint. Beginning with the second request, the Court should deny the preliminary injunction because Plaintiffs' delay in adding the new Plaintiffs—eleven religious organizations, the majority of which reside outside the District of Massachusetts, with hundreds, if not thousands of member places of worship—and then subsequently waiting four months before seeking injunctive relief, substantially undermines their claims of irreparable harm. Furthermore, this Court lacks jurisdiction to grant the requested preliminary injunction to those Plaintiffs it initially denied preliminary relief to because of the pending First Circuit appeal. As to the first request, Plaintiffs spill a lot of ink explaining how the Court has jurisdiction to proceed to final judgment but offer very little reason why it should do so. Defendants do not contest the Court's jurisdiction to proceed to final judgment but maintain the Court's inclination to wait for direction from the First Circuit is correct considering both the equities and judicial economy. Finally, Plaintiffs improperly use the current motion as a second chance to argue against severing the Plaintiffs added to the case via the Amended Complaint. The Court should ignore these arguments because they are an improper sur-reply but, in any event, those arguments lack merit.

## BACKGROUND

Congress has directed DHS to enforce the Nation's immigration laws, 8 U.S.C. § 1103(a)(1), and has granted immigration officers broad authority to issue warrants, arrest, and detain removable aliens, *see, e.g.*, *id.* §§ 1226, 1357. For decades, DHS has used that authority to issue internal guidance governing the factors it should consider, and the level of approval immigration officers should obtain, before conducting enforcement actions in or near sensitive locations, including places of worship. *See, e.g.*, ICE AR 19–21, Mem. from Acting Assoc. Comm'r James A. Puelo (May 17, 1993); *id.* at 28–29, Mem. from Assistant Sec'y Julie L. Myers (July 3, 2008); *id.* at 30–32, Mem. from Dir. John Morton

(Oct. 24, 2011). In 2021, DHS updated its guidance urging officers to avoid taking enforcement actions in or near sensitive locations but simultaneously recognized that there were circumstances "under which an enforcement action" in or near a sensitive location "needs to be taken." DHS AR 2–6, Mem. from Sec'y Alejandro Mayorkas (Oct. 27, 2021) (Mayorkas Memorandum). On January 20, 2025, DHS rescinded the Mayorkas Memorandum and instead directed officers to use "common sense" when contemplating an immigration enforcement action at sensitive locations—including places of worship. *Id.* at 1, Mem. from Acting Sec'y Benjamine Huffman (Jan. 20, 2025) (Huffman Memorandum). Immigration and Customs Enforcement (ICE) issued follow-on guidance charging "Assistant Field Office Directors (AFODs) and Assistant Special Agents in Charge (ASACs) with responsibility for making case-by-case determinations regarding whether, where, and when to conduct an immigration enforcement action in or near a protected area." ICE AR at 1–2, Mem. from Acting Director Caleb Vitello (Jan. 31, 2025) (Vitello Memorandum). Taken together, the Huffman Memorandum and Vitello Memorandum constitute the 2025 Guidance.

Plaintiffs, eleven coalitions of religious organizations representing congregations across the country, challenged the change in guidance six months later on July 28, 2025, *see* Compl., ECF No. 1, and filed for a preliminary injunction the next day, *see* PI Mot., ECF No. 32. The Court granted a preliminary injunction as to eight of those eleven coalitions on February 13, 2026. PI Order, ECF No. 75. The Court determined that three of those coalitions—the San Francisco Friends Meeting, the Pacific Yearly Meeting, and the North Pacific Yearly Meeting (hereafter the "Quaker Plaintiffs")—failed to establish standing and thus denied preliminary relief as to those bodies. PI Mem. at 30–34, ECF No. 74. As relevant here, the Court found that the successful coalitions had shown they likely had standing, were likely to succeed on their Religious Freedom Restoration Act (RFRA) claim, and were likely to suffer irreparable harm in the absence of a preliminary injunction. *See generally*, ECF No. 74. Defendants appealed the grant of the preliminary injunction on April 14, 2026, Defs.' Appeal

Notice, ECF No. 87, and Plaintiffs cross-appealed as to the parts of the Court's order adverse to them on April 27, 2026. Pls.' Cross Appeal Notice, ECF No. 93.

On April 8, 2026, the parties filed a Joint Motion for a Scheduling Order Governing Further Proceedings, ECF No. 86. There, in relevant part, the parties agreed Plaintiffs would file an amended complaint by June 4, 2026, and that they would brief cross motions for summary judgment and related responses from June 18, 2026, to September 24, 2026. *Id.* at 2–3. The parties kept that schedule and, on June 4, 2026, Plaintiffs amended their complaint to add eleven new religious organizations as Plaintiffs: Metropolitan New York Synod, Northwest Washington Synod, Minneapolis Area Synod, Delaware-Maryland Synod, Metro D.C. Synod, Southeastern Synod, Metropolitan Chicago Synod, Pacifica Synod, Upstate New York Synod, District of Columbia Baptist Convention, and the Southern New England Conference (hereafter the "New Bodies"). First Am. Compl. at 1, ECF No. 97. Nine of these new religious organizations are members of the Evangelical Lutheran Church in America (ELCA). Pls.' MSJ Resp. at 38, ECF No. 121. Plaintiffs did not otherwise amend their complaint. *See* ECF No. 97. Defendants moved to sever ten of the eleven New Bodies (all except for Southern New England Conference which is located in the District of Massachusetts) in their cross motion for summary judgment. *See* Cross MSJ Mot. and Mot. to Sever at 5–9, ECF No. 115.

The parties completed summary judgment briefing on September 24, 2026, and the Court held oral argument on October 14, 2026. *See* ECF Nos. 97, 110, 114, 121, 136 & 139. During that hearing, the Court indicated it was inclined to wait for the First Circuit to rule on the parties' pending preliminary injunction cross-appeals before resolving the cross motions for summary judgment. Conditional Second Mot. for Prelim. Inj. at 1, ECF No. 141 at 1. As of this filing, the parties have not completed briefing before the First Circuit but expect to do so by the final week of December 2026.

On October 20, 2026, Plaintiffs filed a Conditional (Second) Motion for a Preliminary Injunction requesting that the Court to proceed to final judgment or, in the alternative, issue a second preliminary injunction providing "the same protections afforded . . . by the existing preliminary

injunction" as to the Quaker Plaintiffs and the New Bodies. ECF No. 141 at 2 n.1; *id.* at 8. Defendants oppose that motion.

## LEGAL STANDARD

District courts have broad discretion to control the timing of proceedings as an incident to their power to control their own dockets. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Higher courts review such decisions for abuse of discretion. *See Clinton*, 520 U.S. at 707. Courts expedite consideration of motions for preliminary injunctive relief if the movant can show "good cause." 28 U.S.C. § 1657(a). The movant demonstrates "good cause" if a right under the Constitution or federal statute "would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Id.* A preliminary injunction further requires "that the moving party [] establish[] (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) that the balance of equities weighs in its favor, and (4) that a preliminary injunction is in the public interest." *New England Synod v. DHS*, 824 F. Supp. 3d 118, 138-39 (D. Mass. 2026).

## ARGUMENT

This Court should dismiss Plaintiffs' second motion for a preliminary injunction. Plaintiffs' delay in adding the New Bodies and bringing a second preliminary injunction undermines any showing of irreparable harm; and the Court lacks jurisdiction to issue a new preliminary injunction as to the Quaker Plaintiffs. The Court should further deny Plaintiffs' request to proceed to final judgment because considerations of judicial efficiency strongly favor the Court's wait-and-see-approach. Finally, if the Court is inclined to consider the merits of Plaintiffs' second motion for a preliminary injunction, the Court should grant Defendants' motion to sever the New Bodies with exception of the Southern New England Conference because Plaintiffs still cannot identify any cognizable prejudice they would suffer from severance.

## I. The Court Should Deny Plaintiffs' Motion to Extend the Preliminary Injunction.

### A. Plaintiffs' Delay in Adding the New Bodies Undermines any Showing of Irreparable Harm.

This Court should not issue a preliminary injunction as to the New Bodies because their over 16-month delay in joining this suit, and 20-month delay in seeking injunctive relief, substantially undermines their claims of irreparable harm. "[D]elay between the institution of an action and the filing of a motion for preliminary injunction, not attributable to intervening events, detracts from the movant's claim of irreparable harm." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004). "The longer the delay, the more pervasive the doubt." *Id.* Courts within the First Circuit routinely cite this principle to reject preliminary injunction motions where plaintiffs have delayed seeking relief, including in cases where the window for seeking preliminary relief was much narrower. *See, e.g.*, *La Simple Co, Ltd. v. SLP Enters., LLC*, No. CV 21-10058-LTS, 2021 WL 1648762, at *8 (D. Mass. Apr. 27, 2021) (two-month delay).[1] This is because "a reasonable inference from the delay of the moving party is that he has little interest in vindicating whatever rights he may have." *Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710, 713 (1st Cir. 1977). Nor do the equities allow a movant to point to "an 'emergency' created by its own decisions concerning timing to support a motion for preliminary injunction." *Max-Planck-Gesellschaft Zur Förderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Rsch.*, 650 F. Supp. 2d 114, 123 (D. Mass. 2009).

Courts around the country have likewise relied on comparable, or shorter, delays to deny preliminary relief because it undercuts the plaintiffs' claims of irreparable harm. *See, e.g., Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1010 & n.4 (8th Cir. 2019) (five-month delay fatal to request for injunctive relief); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates

[1] *See also Brennan v. Bos. Beer Co.*, No. CV 24-10029-GAO, 2025 WL 50365, at *2 (D. Mass. Jan. 8, 2025) (three-month delay); *Asymmetrx Med., Inc. v. McKeon*, 932 F. Supp. 2d 232, 237-38 (D. Mass. 2013) (eleven-month delay); *Fuchs v. Steel-Fab, Inc.*, 356 F. Supp. 385, 388 (D. Mass. 1973); (four-month delay); *Seafreeze Shoreside, Inc v. U.S. Dep't of Interior*, No. 1:22-CV-11091-IT, 2023 WL 3660689, at *5 (D. Mass. May 25, 2023) (eleven-month delay); *Doe v. Trs. of Dartmouth Coll.*, 597 F. Supp. 3d 511, 514 (D.N.H. 2022) (two-month delay); *Montague v. Yale Univ.*, No. 3:16-CV-00885(AVC), 2017 WL 4942772, at *4 (D. Conn. Mar. 8, 2017) (four-month delay); *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 36 (1st Cir. 2011) (three-month delay)

against a finding of irreparable harm."); *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction."); *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (six-months is "a long delay in seeking relief" that "indicates that speedy action is not required" (citation omitted)); *Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983) (two-month "delay is inconsistent with a claim of irreparable injury"); *Am. Forest Res. Council v. Williams*, No. CV 21-601 (RJL), 2021 WL 4819846, at *4 (D.D.C. Oct. 13, 2021) (seven-month delay was "highly indicative of the fact that plaintiffs do not in fact face the kind of harm warranting a preliminary injunction."). These cases show that delaying anywhere between two and ten months, and certainly beyond eleven, generally means plaintiffs cannot demonstrate irreparable harm.

Here, Plaintiffs waited a total of 501 days—one year, four months, and fifteen days—from the day DHS issued the Huffman Memorandum before seeking to add the New Bodies. Plaintiffs waited an additional four months before bringing their second preliminary injunction motion. That combined delay alone is sufficient to dismiss Plaintiffs' second motion for a preliminary injunction. This Court should note that Defendants use the day Plaintiffs added the New Bodies via amended complaint to calculate the delay, in addition to the date Plaintiffs filed their second motion for a preliminary injunction. That is because the date Plaintiffs filed their amended complaint was their first opportunity to seek injunctive relief for the New Bodies—an opportunity that Plaintiffs did not utilize.

Plaintiffs attempt to explain away their delay by stating they opted to continue with summary judgment briefing instead of bringing a new preliminary injunction "[t]o keep proceedings on track to a prompt resolution and to avoid burdening the Court with potentially duplicative motions practice[.]" ECF No. 141 at 5. But that does not explain why the New Bodies did not bring a separate suit seeking preliminary relief earlier. And it does not answer why Plaintiffs waited nearly a year and a half to add the New Bodies in the first place. *See Charlesbank*, 370 F.3d at 163. That omission is especially

confusing when considering nine of the ten New Bodies are members of the same religious organization as the original Plaintiffs and so presumably were at least aware of this litigation. ECF No. 121 at 38. Plaintiffs further freely negotiated the time to add the New Bodies. ECF No. 86 at 2. Plaintiffs' delay in adding the New Bodies therefore is self-inflicted and this Court should give little consideration to the emergency Plaintiffs created by their own litigation decisions. *Whitehead Inst. for Biomedical Rsch.*, 650 F. Supp. at 123. Thus, Plaintiffs' unexplained and self-inflicted delay makes clear that any urgency Plaintiffs now assert is entirely of their own making and cannot sustain a claim of irreparable harm.

The cases Plaintiffs cite in support of their motion stand in stark contrast to the situation here. In the out-of-Circuit case of *Martin Luther King, Jr. Cnty. v. Turner*, though the district court allowed the original plaintiffs to amend their complaint twice, the first time adding 23 new plaintiffs and the second time adding 29, 798 F. Supp. 3d 1224, 1236-38 (W.D. Wash. 2025), the amendments' timing is important. There, the plaintiffs added the first 23 new plaintiffs before the district court issued a preliminary injunction. *Id.* The plaintiffs added the second 29 new plaintiffs approximately six weeks later; and those plaintiffs further sought additional relief against new defendants. *Id.* at 1237. In *Bollat Vasquez v. Mayorkas*, as well, plaintiffs amended their complaint to add seven new individuals and filed a second motion for a preliminary injunction *seven* months after litigation began. 520 F. Supp. 3d 94, 97 (D. Mass. 2021). In neither case did the defendants oppose joinder, *Turner*, 798 F. Supp. 3d at 1237 n.3; *Vasquez*, 520 F. Supp. 3d at 97, the opposite of the situation here where Defendants *do so oppose*. Thus, by any measure, Plaintiffs' unjustified delay in adding thousands of member churches over 16-months from the date Defendants issued the 2025 Guidance—and their additional four month delay in seeking injunctive relief—bars them from obtaining preliminary injunctive relief.

### B. This Court No Longer Has Jurisdiction to Issue a Preliminary Injunction as to the Quaker Plaintiffs Because of the Appeal.

Plaintiffs urge this Court to issue a second preliminary injunction to extend relief to the original Quaker Plaintiffs the Court found likely lacked standing. *New England Synod*, 824 F. Supp. 3d at 149–

152. This Court, however, no longer has jurisdiction to enter a preliminary injunction mirroring the first injunction as to the Quaker Plaintiffs because Plaintiffs appealed "the portions of the [first] preliminary injunction . . . that are adverse to [them]." ECF No. 93. "The filing of a notice of appeal is an event of jurisdictional significance" that "divests the district court of its control over those aspects of the case involved in the appeal." *Colon-Torres v. Negron-Fernandez*, 997 F.3d 63, 74 (1st Cir. 2021) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)). "The qualification 'involved in the appeal' is essential." *Bradford- Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997) (Easterbrook, J.). The First Circuit has established that district courts may "enter orders that concern matters unrelated to the substance of the decision being appealed," but otherwise may not interfere in the aspect of the case involved in the appeal absent "narrow exceptions[.]" *Colon-Torres*, 997 F.3d at 74 (citation omitted). District courts may not, of course, "exercise concurrent jurisdiction over a matter after the notice of appeal has been filed." *Id.* at 75.

Plaintiffs appealed "the portions of the preliminary injunction order entered in this action on February 13, 2026 (ECF Nos. 74 and 75) that are adverse to [them]." ECF No. 93. That includes this Court's finding that the Quaker Plaintiffs likely do not have standing. *New England Synod*, 824 F. Supp. 3d at 149–152. This Court, therefore, does not have jurisdiction to enter a preliminary injunction mirroring its initial injunctive relief as to these Plaintiffs.

Even if the Court were to disagree and consider, as Plaintiffs urge, the Quaker Plaintiffs' declarations submitted in support of Plaintiffs' Motion for Summary Judgement, ECF No. 141 at 8, the Quaker Plaintiffs' new summary-judgment declarations likewise fail to establish standing, as they show no change in the alleged harms since the original preliminary-injunction stage. *Compare New England Synod*, 824 F. Supp. 3d at 149–152 (explaining these plaintiffs' "fears, anxieties, and concerns about the prospect of future immigration raids[]" did not "suffice to make a 'clear showing' . . . [they] suffered any cognizable injuries") *with* Ex. 26, Decl. of Robin DuRant ¶¶ 18–19, ECF No. 111-26 (alleging "just the threat of immigration-enforcement actions at a Quaker Meetinghouse or at any

place where a Meeting for worship is occurring is causing serious harm" and further asserting, without support, that "the Meeting that I attend, . . ., has seen a sharp decrease in attendance"); Ex. 51, Decl. of Gail Cornwall-Feeley ¶¶ 31–33, ECF No. 111-51 ("Even without actual enforcement action, we fear that immigrants who have been labeled undocumented will not continue to come to our events, fearing ICE enforcement within our space. We fear that other groups that serve the immigrant community will not want to continue renting space from us, fearing ICE enforcement within our space."); Ex. 52, Decl. of Euclid Bautista ¶¶ 18–20, ECF No. 111-52 ("I know of immigrant attenders who are worried about DHS's new policy, and some may simply not show up in person for worship services if there is a chance that immigration-enforcement actions could happen there."). These allegations are the same "fears, anxieties, and concerns" this Court previously found insufficient during the preliminary injunction stage. They further underscore the difference between the situation here and that in *Massachusetts v. Department of Education*, 831 F. Supp. 3d 34, 37 (D. Mass. 2026). In *Massachusetts*, this Court allowed six plaintiff-coalitions to intervene in part because it did not "appear that the government contest[ed] that the six associations [had] standing[.]" *Id.* But here, Defendants *do* argue the Quaker Plaintiffs lack standing. *See supra* at 11–12. Consequently, with Defendants opposing standing here, and the standing issue squarely before the First Circuit and unchanged on this record, the Court cannot and should not issue a new preliminary injunction as to the Quaker Plaintiffs.

## II. Considerations of Judicial Economy Strongly Favor Waiting for the First Circuit Before Ruling on the Cross-Motions for Summary Judgment.

During the summary judgment hearing, this Court indicated it was inclined to wait for the First Circuit to rule on the parties' pending preliminary injunction cross-appeals before resolving their cross motions for summary judgment. ECF No. 141 at 1. Considerations of judicial economy demonstrate this Court's inclination is correct. Plaintiffs further fail to articulate a satisfactory reason why this Court should bypass the First Circuit and rush to final judgment.

This Court has inherent power to control the disposition of the cases on its docket and is free to exercise judgment weighing the competing interests of the parties and its own busy schedule. *Landis*, 299 U.S. at 254; *see also Nat'l Ctr. for Learning Disabilities v. Off. of Mgmt. & Budget*, No. 26-CV-13019-ADB, 2026 WL 2644014, at *1 (D. Mass. July 22, 2026) ("District courts have broad discretion to manage scheduling according to the needs of a case") (citation modified)). Higher courts routinely uphold circumspect pauses in litigation, especially where guidance from a higher court appears imminent. *See, e.g.*, *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also Agostini v. Felton*, 521 U.S. 203, 207 (1997). For example, the First Circuit recently held that a seven-month delay in ruling on a motion for a preliminary injunction was not unwarranted. *See* Notification of Filing of Pet. for Writ of Mandamus, Ex. A at 3, *AFGE, AFL-CIO, et al., v. Kupor, et al.*, Case No. 1:25-cv-13305-GAO (D. Mass. June 15, 2026), ECF No. 82-1; *id.*, Order Denying Mandamus (D. Mass. June 26, 2026), ECF No. 83 ("We are confident the district court will promptly decide the motion").

Waiting a few months until the First Circuit rules on the preliminary injunction is well within this Court's discretion. Plaintiffs' concern that the First Circuit will not rule until late 2027, ECF No. 141 at 1, does not justify proceeding to final judgment. The concern is also misplaced. The median time that elapses from filing a notice of appeal to disposition for the First Circuit is 15.6 months. *See* U.S. Courts, *U.S. Court of Appeals Summary -- 12-Month Period Ending June 30, 2026* at 2, https://perma.cc/2VYLVT64; *see also* ECF No. 141 at 3. To date, approximately 7.5 months have passed since the parties filed their respective notices of appeal. *See* ECF Nos. 87 & 93. Thus, it is reasonable to expect the First Circuit's ruling in roughly eight months—June 2027. Indeed, briefing of the cross-appeals should be concluded by the end of December 2026.

It goes without saying that a court's power to manage the timing of its docket is not boundless. For example, higher courts have overturned seven-year pauses in litigation because they could "increase the danger of prejudice resulting from the loss of evidence." *Clinton*, 520 U.S. at 707–8; *see*

*also McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) (holding an indefinite stay potentially lasting seven-years or longer was an abuse of discretion). But this Court's contemplated approximately eight-month delay is far shorter than the seven-year delays other courts have determined is an abuse of discretion. *Clinton*, 520 U.S. at 707; *Blanchard*, 667 F.2d at 479. And there is no loss-of-evidence risk here since the parties have completed summary judgment briefing. Accordingly, a brief, finite pause to await the First Circuit's imminent guidance is well within the Court's discretion.

**III. The Court Should Sever the New Plaintiffs**

It bears noting that Plaintiffs use the second preliminary injunction motion to bring new arguments against Defendants' Motion to Sever because it supplements their previous response by adding new legal arguments and authorities. *Compare* ECF No. 141 at 7 *with* ECF No. 121 at 38–40. The Court should ignore these arguments because they constitute an unauthorized sur-reply. *See* LRCiv. P. 7(b)(3) (stating parties need leave of court to file all other papers besides a motion and an opposition to a motion). "Surreplies are highly disfavored," and "courts [do] not allow surreplies except in the most extraordinary circumstances." *Sims v. Paramount Gold & Silver Corp.*, No. CV 10-356-PHX-MHM, 2010 WL 5364783, at *8 (D. Ariz. Dec. 21, 2010) (citation modified); *see also Primary Productions LLC, Plaintiff, v. Apple, Inc., Defendant.*, No. 2:21-CV-00137-JDL, 2021 WL 3610507, at *1 n.1 (D. Me. Aug. 13, 2021) (same). Plaintiffs have not identified any extraordinary circumstances explaining why they could not bring these arguments in their reply brief. *See* ECF No. 141 at 7. Thus, the Court should not consider these arguments as a matter of fairness.

Even if the Court were inclined to consider the new arguments, it should reject them because they lack merit. First, Plaintiffs allege Defendants have not shown any prejudice. *Id.* Not true. Defendants identified the following prejudices in their summary judgment briefing: (1) the number and diversity of Plaintiffs engenders numerous "mini-trials;" and (2) principles of judicial fairness demonstrate adding the New Bodies "nourish[es] the impression that the courts" are susceptible to judge-shopping. *In re Cargill, Inc.*, 66 F.3d 1256, 1264 (1st Cir. 1995); *see also* Defs.' Reply in Supp. of

Cross Mot. for Summ. J. at 1–4, ECF No. 136. Rather, it is Plaintiffs who fail to articulate cognizable prejudice; the prospect of future litigation is not prejudice and the potential for diverse holdings among judicial circuits serves the judiciary. *See* ECF No. 136 at 3–4. Plaintiffs' attempt to cabin judicial percolation's usefulness to the nation-wide injunction context alone is unpersuasive. *See* ECF No. 141 at 7. As a matter of common sense, judicial percolation applies to *all* legal contexts since every legal question can benefit from varied and thoughtful judicial opinions. *See, e.g.*, Daniel R. Cahoy & Lynda J. Oswald, *A Serendipitous Experiment in Percolation of Intellectual Property Doctrine*, 95 Ind. L. J. 39 (2020) (providing empirical evidence of the impact of percolated intellectual property doctrine versus the impact of isolated doctrine from the Federal Circuit). In any event, the scope of Plaintiffs' proposed injunction—covering tens of thousands of churches with hundreds of thousands of members residing in every state, *see* ECF No. 136 at 2—demonstrates precedent in the nation-wide injunction context is cogent.

Second, the new cases Plaintiffs cite also miss the mark; they do not show that it is appropriate to join the New Bodies nearly a year after the litigation commenced (and more than 16 months from the issuance of the 2025 Guidance) and then wait an additional four months before filing a second motion for injunctive relief. Begin with *Commonwealth of Massachusetts v. Department of Education*, 828 F. Supp. 3d 198 (D. Mass. 2026). There, the plaintiffs all joined at the onset of the lawsuit. *Id.* at 202. Unlike the New Bodies here, they did not wait nearly a year. Even in a later opinion granting preliminary injunctive relief as to intervenor-plaintiffs— *Massachusetts v. Department of Education*, 831 F. Supp. 3d 34 (D. Mass. 2026)—the intervenor-plaintiffs sought to join the lawsuit *mere days* after the court entered preliminary relief as to the original plaintiffs. *See id.* at 42–43. Less than two weeks passed between the Court's initial hearing for a preliminary injunction and the time by which all intervenor-plaintiffs sought to join the lawsuit. *Id.* Furthermore, defendants there did not oppose the motions to intervene, *id.* at 43, whereas Defendants here do so oppose.

These facts—all plaintiffs joining the lawsuit at the onset of litigation, waiting merely days after preliminary relief is entered to join the lawsuit, or defendants not opposing joinder—are common to every case in Plaintiffs' footnote string cite. *See Massachusetts v. NIH*, 770 F. Supp. 3d 277, 287-88 (D. Mass. 2025) (defendants did not oppose consolidation; also, all three plaintiff groups moved for an injunction 3 days after the challenged action went into effect); *California v. Trump*, 840 F. Supp. 3d 37, 52 (D. Mass. 2026) (all plaintiffs joined at the onset of the lawsuit and no parties sought to join or intervene); *New York v. McMahon*, 784 F. Supp. 3d 311, 324-25 (D. Mass. 2025) (defendants did not oppose consolidation; also, both plaintiff groups moved for an injunction within 3 weeks of the challenged action taking effect) ), *appeal dismissed*, No. 25-1495, 2025 WL 3451815 (1st Cir. Sept. 15, 2025); *Venezuelan Ass'n of Mass. v. U.S. Citizenship & Immigr. Servs.*, --- F. Supp. 3d ----, 2026 WL 2255272, at *6 (D. Mass. Aug. 5, 2026) (all plaintiffs joined at the onset of the lawsuit). Each case is inapposite to the situation here where Plaintiffs seek to join thousands of member churches nearly a year after the litigation began (and 16 months after the 2025 Guidance issued), then wait another four months to seek injunctive relief, all while Defendants oppose joinder.

Finally, Plaintiffs suggest Defendants cite "a single case severing plaintiffs in circumstances like these." ECF No. 141 at 7. Assuming "circumstances like these" to mean high-profile litigation seeking wide-ranging relief, Defendants refer this Court to *NAACP v. New York*, where the court denied a motion to intervene[2] in litigation involving certain counties' responsibilities under the Voting Rights Act because the motion was untimely. 413 U.S. 345, 366 (1973). Even assuming Plaintiffs' use of the phrase "circumstances like these," ECF No. 141 at 7, means litigation challenging the issuance of the 2025 Guidance regarding places of worship, the reason why Defendants cannot provide such an example is because *no other plaintiff* has sought to double the number of religious organizations nearly a year after the commencement of the lawsuit (more than 16 months after Defendants issued the 2025 Guidance) and then waited another four months before seeking injunctive relief. *See* Am.

[2]The First Circuit considers both intervention and joinder under the same framework of judicial efficiency. *Pujol v. Shearson/Am. Express*, 877 F.2d 132, 134 (1st Cir. 1989).

Compl., *Philadelphia Yearly, et al., v. DHS*, Case No. 8:25-cv-243-TDC (D. Md. Feb. 5, 2025), ECF No. 28-1 (adding three plaintiffs less than two weeks after initiating the lawsuit; defendants also did not oppose); *Mennonite Church, et al., v. DHS*, Case No. 1:25-cv-403-DLF (D.D.C. Feb. 11, 2025) (foregoing adding any new plaintiffs). Such an eleventh-hour expansion of Plaintiffs' roster reflects not a deficiency in Defendants' examples, but Plaintiffs' own atypical and burdensome approach to this litigation. In short, Plaintiffs' effort to justify late-stage expansion of the case finds no support in law or fact and the Court should sever the New Bodies with exception to the Southern New England Conference.

## CONCLUSION

The Court should deny Plaintiffs Conditional (Second) Motion for a Preliminary Injunction, ECF No. 141, and grant Defendants' motion to sever the newly added Plaintiffs that do not reside in the district.

Dated: November 3, 2026

Respectfully submitted,
BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KRISTINA A. WOLFE
Assistant Branch Director
Federal Programs Branch

*/s/ Richard C. Giles*
RICHARD C. GILES
Trial Attorney (WY Bar No. 8-7222)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St., NW, Room 11404
Washington, D.C. 20530
(202) 616-8482
Richard.C.Giles@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On November 3, 2026, I served the foregoing on all parties by electronically filing it through the CM/ECF system.

*/s/ Richard Cody Giles*
Richard Cody Giles