**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

**New England Synod, Evangelical Lutheran Church in America,** *et al.*,

Plaintiffs,

v.

**Department of Homeland Security,** *et al.*,

Defendants.

**Case No. 4:25-cv-40102-FDS**

**Leave to file granted on November 9, 2026**

**REPLY IN SUPPORT OF PLAINTIFFS' CONDITIONAL (SECOND) MOTION FOR PRELIMINARY INJUNCTION**

Defendants' opposition confirms that, if the Court does not simply proceed to resolving this case at final judgment, and instead decides to await resolution of the pending appeals, it should grant a preliminary injunction to protect Moving Plaintiffs in the meantime.[1]

The Court previously determined that the Plaintiffs covered by its existing preliminary injunction were likely to succeed on the merits of their claims under the Religious Freedom Restoration Act and would likely suffer irreparable harm without an injunction, and that the public interest and balance of equities favored immediate relief. ECF Nos. 74, 75. With the exception of the three Quaker Plaintiffs whose standing Defendants dispute, Defendants' opposition does not contest that the Court's analysis on the preliminary injunction factors applies with equal force to the Moving Plaintiffs. Why, then, should these Plaintiffs be treated

[1] Moving Plaintiffs are: Southern New England Conference, United Church of Christ; D.C. Baptist Convention; San Francisco Friends Meeting; Pacific Yearly Meeting; North Pacific Yearly Meeting; and the Metropolitan New York, Northwest Washington, Minneapolis Area, Delaware-Maryland, Metro D.C., Southeastern, Metropolitan Chicago, Pacifica, and Upstate New York Synods of the Evangelical Lutheran Church in America.

differently, and they and their members be deprived of core protected rights of religion and association during the pendency of this litigation? Defendants offer three arguments as to different sets of Moving Plaintiffs; each of these arguments can be readily dismissed.

**1.** Defendants claim that Moving Plaintiffs—minus the three Quaker Plaintiffs—are not truly suffering irreparable harm from infringement of their fundamental rights because they did not request a preliminary injunction sooner. This "delay" argument ignores that Moving Plaintiffs sought a preliminary injunction promptly—less than one week after the Court indicated at the October 14 hearing that it might defer consideration of the parties' summary judgment motions for as long as a year or more. For this reason alone, the cases Defendants cite (at 5-6) involving delays of significantly longer than a week are simply irrelevant.

While Defendants want to measure time from the date they adopted the 2025 Policy, their own authorities recognize that "intervening events" can arise that highlight or exacerbate the need for preliminary relief. *See, e.g.*, *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) ("[D]elay … *not attributable to intervening events*[] detracts from the movant's claim of irreparable harm." (emphasis added)) (quoted in Opp. at 5); *see also, e.g.*, *Massachusetts v. Dep't of Educ.*, 828 F. Supp. 3d 198, 220 (D. Mass. 2026) (rejecting government's delay argument and granting preliminary relief after considering plaintiffs' timeline "in … context"); *Calamari Fisheries, Inc. v. Vill. Catch, Inc.*, 698 F. Supp. 994, 1014 (D. Mass. 1988) (rejecting argument over alleged 21-month delay because plaintiff "responded immediately" to changed circumstances highlighting need for relief).

The Court's suggestion at the October 14 hearing that it might wait until late 2027 to begin consideration of the request for permanent injunctive relief in Plaintiffs' summary judgment motion—and Defendants' sudden and opportunistic embrace of that suggestion, after

having previously told the Court that proceeding directly to summary judgment "will best conserve the Court's and the Parties' resources," ECF No. 86 at 2—are intervening events that create a need for Moving Plaintiffs to seek preliminary relief that they did not previously have.

More fundamentally, even the cases on which Defendants rely merely hold that delay can undermine a showing of harm—not that it categorically precludes such a showing. Defendants cannot seriously contend that churches and other religious organizations do not suffer irreparable injury from RFRA violations that significantly burden their and their members' ability to practice their faith, including by joining together for communal worship. That argument is both plainly wrong and foreclosed by binding precedent. *See, e.g.*, *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) ("There can be no question that the challenged restrictions [on communal worship] … will cause irreparable harm."). Indeed, the Court recognized as much in its preliminary injunction opinion, which found that the challenged policy causes irreparable harm. *See* ECF No. 74 at 54-55. Defendants do not (and could not) explain why members of, say, the New England Synod of the ELCA suffer irreparable harm when they are unable to worship together in community, but members of the Southern New England Conference, UCC, do not. Certainly, Moving Plaintiffs' injuries are in no way lessened by the fact that they negotiated with Defendants, and have diligently pursued, an orderly and expeditious path to moving this case to final judgment that Defendants now wish to abandon.

**2.** As to the three Quaker Plaintiffs, Defendants primarily argue (at 7-8) that the Court lacks jurisdiction to resolve their second request for a preliminary injunction because of the pending appeal. That is wrong. The sole issue Plaintiffs have cross-appealed is whether they are

entitled to a stay under 5 U.S.C. § 705 in the event the First Circuit does not affirm the existing preliminary injunction. Resolution of that question will not require consideration of the Quaker Plaintiffs' standing because only one Plaintiff would need standing in order to secure a stay. But even if the Quaker Plaintiffs' standing *were* at issue in the cross-appeal, the question there would be whether they had put forward enough evidence to establish standing when they first sought preliminary relief, in July 2025. In contrast, the question the Quaker Plaintiffs ask this Court to resolve here is whether the additional evidence they have now submitted as part of the summary judgment record establishes their standing. *See* ECF No. 111 at 22-23 (discussing this additional evidence). The critical difference between those two questions is demonstrated by the cases cited in Plaintiffs' motion holding that "when a preliminary injunction has been appealed and a new motion for preliminary injunction is filed, there is no jurisdictional bar to the district court resolving that motion," and the movant "[is] allowed to present new evidence." *Adams v. City of Chicago*, 135 F.3d 1150, 1153-54 (7th Cir. 1998); Mot. at 4-5 (collecting other cases). Defendants have no answer to these cases, but the clear jurisdictional rule they set out forecloses Defendants' argument with respect to the Quaker Plaintiffs.

Defendants argue in the alternative (at 8-9) that even now the Quaker Plaintiffs have failed to establish their standing. But to make that argument, Defendants rely on their familiar tactic of cherry-picking statements out of context and ignoring the remainder of the evidence, including most of the statements highlighted in Plaintiffs' motion for summary judgment. *See* ECF No. 111 at 22-23 (citing Ex. 26 ¶¶ 19-25; Ex. 51 ¶¶ 33-35; Ex. 52 ¶¶ 14-17, 22). That newly submitted evidence confirms the Quaker Plaintiffs' standing, and Defendants fail to identify any way in which it falls short of the evidence that the Court previously found was sufficient to establish the standing of other Plaintiffs to secure preliminary relief.

**3.** Defendants also suggest (at 11-14) that ten of the Moving Plaintiffs—*i.e.*, all but the Quaker Plaintiffs and the Southern New England Conference—are not entitled to a preliminary injunction because they should be severed from the case. This issue has been well-canvassed by the parties at this point, and little more need be said. It is telling, however, that even at this late date, Defendants have identified no basis in law for prohibiting Plaintiffs from exercising their right to proceed together in this litigation, just as countless litigants do every day in federal courts across the country, including this one. *See, e.g.*, *Dep't of Educ.*, 828 F. Supp. 3d at 202; *Massachusetts v. Dep't of Educ.*, 831 F. Supp. 3d 34, 37-38, 41 (D. Mass. 2026).

While Defendants claim (at 11-12) they will be "prejudiced" by having to litigate Plaintiffs' claims in a single suit instead of multiple suits, they wholly fail to support that claim. The risk and burden to Defendants of "mini-trials"—Defendants' term for having to answer for their alleged violations of court orders—is not diminished, and is instead likely increased, by the needless multiplication of proceedings that Defendants seek. Nor are Defendants, the Department of Homeland Security and DHS Secretary Mullin, in any way "prejudiced" by "the impression" of "judge-shopping," *contra* Opp. at 11—a (false) impression that Defendants have only sought to stoke. To the extent Defendants claim (at 12) that DHS and Secretary Mullin are prejudiced by insufficient "percolation" of legal issues, that claim is (a) implausible on its face, and (b) not implicated here, where multiple courts across the country are already hearing challenges to the 2025 Policy.

Equally telling is Defendants' inability to identify a single case in which a court has severed plaintiffs in like circumstances. Their best effort (at 13) is a case that denied a motion to intervene under Federal Rule of Civil Procedure 24 as untimely, *NAACP v. New York*, 413 U.S. 345, 366 (1973). But no party has sought intervention in this case; all Plaintiffs joined either via

the original complaint or by an amended complaint filed as of right. *See* Fed. R. Civ. P. 15(a)(1); ECF No. 91 at 1 (setting time for filing amended complaint). Not even Defendants contend that the filing of the amended complaint was untimely. So *NAACP* is entirely beside the point.

As noted, it is commonplace for groups of plaintiffs to decide it is more efficient and economical to press their claims together in a single suit. *See* Mot. at 7 & n.2 (collecting examples); *see also Mennonite Church USA v. DHS*, --- F.4th ----, 2026 WL 3132807, at *2-3 (D.C. Cir. Oct. 20, 2026) (allowing a challenge to the 2025 Policy to proceed on behalf of "a coalition of twenty-seven Judeo-Christian organizations" that "collectively represent the interests of millions of worshippers," with no suggestion from the government that it would be prejudiced by those plaintiffs proceeding together in one case). It is unclear why the government has chosen to single out Plaintiffs and argue they are uniquely unable to pursue this normal and salutary approach to vindicating their rights in court. Whatever the reason, Defendants have put forward no plausible legal grounds for severing the ten Plaintiffs they have targeted, and the Court should reject Defendants' transparent effort to evade—or, at minimum, substantially complicate and delay—those Plaintiffs' efforts to secure relief as to a policy the Court has already determined is likely unlawful and is causing ongoing irreparable harm to religious practice and association.

* * *

That leaves one final issue to address. Reversing course from their prior representations to the Court, *see* ECF No. 86 at 2, Defendants now urge (at 9-11) that the Court should postpone even beginning to consider the parties' cross-motions for summary judgment until the appeals are resolved. Defendants get wrong their predictions of when that resolution is likely to come. For example, 15.6 months from April 27, the date of Plaintiffs' cross-appeal, is roughly August 14,

2027, not "June 2027." *Contra* Opp. at 10.[2] And the important issues in this case, the fact that it involves a cross-appeal, and the fact that, due to extensions, the appeals are now unlikely to be fully briefed until early January all strongly suggest that the appeals will take longer than average to resolve. Defendants have not even tried to meet their burden under controlling law to show "a clear case of hardship or inequity" from being required to move forward in this Court during that time. *See* Mot. at 6.

For these reasons, and those in Plaintiffs' opening motion, Plaintiffs respectfully maintain that the most appropriate and efficient approach is for the Court to proceed to resolve the pending cross-motions for summary judgment, along with Defendants' motion to sever. Ultimately, however, Plaintiffs' most pressing and immediate concern is for the severe and ongoing harms to their core rights of religious practice and association caused by Defendants' 2025 Policy. Whether the Court elects to proceed to final judgment now or only after the appeals are resolved, it should grant appropriate injunctive relief—either permanent or preliminary—to address those harms. What it should in no event do is what Defendants ask, which is to leave the majority of Plaintiffs without any protection at all from the very same burdens on religious practice that the Court already determined are being caused by Defendants' unlawful policy.

Dated: November 9, 2026

Respectfully submitted,

*/s/ Kevin E. Friedl*

Kevin E. Friedl*
J. Sterling Moore*
Ryan Downer*
Madeleine Gates*

---

[2] Defendants also get their math wrong in claiming (at 12) that Plaintiffs seek an injunction covering "tens of thousands of churches." That is incorrect. Plaintiffs collectively represent roughly 7,550 congregations, *see* Am. Compl. (ECF No. 97) ¶¶ 14-34; SJ Ex. 45 (ECF No. 111-45) ¶ 5—out of an estimated 373,000 congregations in the United States, *see Fast Facts on American Religion*, Hartford Inst. for Religion Rsch., https://perma.cc/6X6E-4X4D. The actual figures only underscore that, contrary to Defendants' assertions (at 12), "precedent in the nation-wide injunction context" has no relevance to this case or to Plaintiffs' request for relief.

WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
700 14th St. NW, Suite 400
Washington, DC 20005
ryan_downer@washlaw.org
madeleine_gates@washlaw.org

Richard J. Leveridge*
Sonia W. Murphy*
Brandon A. Levey*
Samone Ijoma*
Brittney M. Welch*
GILBERT LLP
700 Pennsylvania Ave. SE #400
Washington, DC 20003
Leveridger@gilbertlegal.com
Murphys@gilbertlegal.com
Leveyb@gilbertlegal.com
Ijomas@gilbertlegal.com
Welchb@gilbertlegal.com

Sarah Goetz*
Mark B. Samburg
Ayesha Khan*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
kfriedl@democracyforward.org
smoore@democracyforward.org
sgoetz@democracyforward.org
msamburg@democracyforward.org
akhan@democracyforward.org

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

On November 9, 2026, I served the foregoing on all parties by electronically filing it through the CM/ECF system.

*/s/ Kevin E. Friedl*
Kevin E. Friedl